[Cite as *Ohio v. Vinson*, 2016-Ohio-7604.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103329**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEMETRIAS VINSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART;
REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593122-A

**BEFORE:** E.A. Gallagher, P.J., Boyle, J. and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 3, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
BY: Erika Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Mary McGrath
Christopher D. Schroeder
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Demetrias Vinson appeals his convictions and sentences after he pled guilty to 21 counts in connection with a series of armed robberies and an attempted murder. Vinson argues that the 99-year aggregate prison sentence he received violates the Eighth Amendment and is contrary to law because it imposes a de facto life sentence on a teenager and fails to take into account mitigating circumstances that he contends warrant a shorter aggregate sentence. Vinson further argues that his guilty pleas should be vacated because he was "misled concerning the true extent of his sentencing exposure" and, therefore, did not enter his guilty pleas knowingly, intelligently and voluntarily. He also contends that trial counsel failed to provide effective assistance with respect to the entry of his guilty pleas and the presentation of mitigation evidence at the sentencing hearing. Finally, Vinson contends that the trial court abused its discretion in denying his postsentence motion to withdraw his guilty pleas. For the reasons that follow, we affirm Vinson's convictions, vacate the trial court's imposition of consecutive sentences and remand the matter for the trial court to consider whether consecutive sentences are appropriate pursuant to R.C. 2929.14(C)(4) and, if so, to make the proper findings on the record at the sentencing hearing and to incorporate those findings into its sentencing entry.

**Factual and Procedural Background**

{¶2} On February 25, 2015 a Cuyahoga County Grand Jury indicted Vinson and juvenile codefendant Kain Vaughn (collectively, the "defendants") in a 53-count indictment. The indictment included 49 counts against Vinson[1] relating to five armed robberies and an attempted murder committed over a 12-day period from October 10 to October 22, 2014, in Cleveland.

{¶3} On October 10, 2014, Vinson was part of an armed home invasion, robbing a woman at home with her two young children.[2]

{¶4} On October 17, 2014, Vinson robbed City Cell, a mobile phone store. Vinson pointed a gun at the store owner and forced him to the ground, stealing his wallet and cell phone. Vinson also took $3,200 from the store's cash register, broke the store's telephone and ripped the phone cord from the wall. Vinson struck the store owner in the head with the gun and tied him up with his own belt.

{¶5} On the morning of October 19, 2014, Vinson and Vaughn, armed with handguns, robbed Tom's Food Mart. Later that afternoon, they robbed Franklin Food Mart. Each of these two robberies involved multiple victims. Vinson and Vaughn

---

[1] The counts against Vinson included: one count of attempted murder, 15 counts of aggravated robbery, one count of aggravated burglary, nine counts of felonious assault, 12 counts of kidnapping, two counts of intimidation of a crime victim or witness, one count of vandalism, two counts of carrying a concealed weapon and six counts of having a weapon while under disability. All of the counts except the counts for carrying a concealed weapon and having a weapon while under disability were accompanied by one- and three-year firearm specifications. One of the carrying a concealed weapon counts also included a forfeiture of weapon specification.

[2] Although the state's brief contains a detailed discussion of each of these incidents, there are only limited facts in the record regarding the incidents. Our discussion of the incidents is limited to the facts in the record.

tried to conceal their identities by destroying the security cameras at the stores. In the Tom's Food Mart robbery, Vinson pulled a gun on the cashier while Vaughn forced a customer to the floor at gunpoint. During the Franklin Food Mart robbery, one of the victims had two cell phones and his wallet stolen and his head "stomped on" by the defendants. The defendants told another victim they knew where he lived and threatened to kill him if he identified them.

{¶6} On October 20, 2014, Vinson shot Isaiah Nunn five times in the driveway of a house on West 94th Street in Cleveland. As a result of the shooting, Nunn had to have one of his eyeballs surgically removed.

{¶7} On October 21, 2014, Vinson robbed a convenience store on Puritas Avenue at gunpoint. He and Vaughn were arrested following a foot chase by police on the following day. At the time of his arrest, Vinson was carrying a concealed Smith & Wesson .9 mm handgun.

{¶8} Vinson was indicted on charges relating to all six incidents; Vaughn was indicted for his involvement in two of the robberies. Vinson was 18 years old when the crimes were committed; Vaughn was 17.

{¶9} The state offered a package plea deal to Vinson and Vaughn, which required they both plead guilty to multiple offenses. The defendants agreed to accept the plea offer. As a result, Vinson pled guilty to 21 felony counts: three counts of aggravated robbery with three-year firearm specifications (Counts 2, 6 and 29); four counts of aggravated robbery with one-year firearm specifications (Counts 11, 12, 43 and 44); one

count of aggravated robbery with no firearm specifications (Count 42); one count of kidnapping with a three-year firearm specification (Count 25); one count of kidnapping with a three-year firearm specification (Count 39); two counts of kidnapping with no firearm specifications (Counts 9 and 45); one count of aggravated burglary with a three-year firearm specification (Count 23); one count of attempted murder with a three-year firearm specification (Count 33); two counts of intimidation of a crime victim or witness with one-year firearm specifications (Counts 17 and 18); one count of vandalism (Count 19) and four counts of having a weapon while under disability (Counts 21, 32, 48 and 53), one of which included a forfeiture of weapon specification (Count 53). The remaining counts were nolled.

{¶10} At the plea hearing, defense counsel advised the trial court that he had discussed the plea offer at length with Vinson:

> Judge, I have reviewed the plea bargain that has been tendered by the prosecutor here with my client. I've discussed each and every case that he has, the elements of the offenses, and the nature of the evidence that would [be] present[ed] should this matter go [to] trial.
>
> * * *
>
> Judge, in going through this thing right here — and I want the record to be clear about it — we tried to talk about what kind of sentence the Court would impose. And I said to him, I can't tell you what it would be other than it's a minimum sentence of at least nine years. That's the case that we have before us. That's the way I presented it to my client. I can't tell him a maximum sentence because I don't know what the sentence would be.

So absent that, other than telling him what he's mandatory — what I call like a mandatory minimum nine years on this case, I can't tell him what the sentence is on this case nor have I told him.

{¶11} The trial judge proceeded with the plea colloquy. The trial judge asked Vinson a number of preliminary questions then advised Vinson of his constitutional rights and confirmed that Vinson understood the rights he would be giving up by entering his guilty pleas. The trial court outlined the penalties Vinson faced on each offense to which he was pleading guilty, including the maximum prison sentence for each offense. The trial court did not, however, inform Vinson of the maximum aggregate sentence that could be imposed based on his guilty pleas and did not explain that the sentences on the base offenses to which he would be pleading guilty could be imposed consecutively. Vinson indicated that he understood the potential penalties he faced as a result of his pleas. He confirmed that he was satisfied with the representation he had received from defense counsel and that no threats or promises had been made to him to induce him to change his pleas other than what had been stated on the record.

{¶12} The trial court found that Vinson entered his pleas "knowingly and voluntarily * * * with full understanding of [his] constitutional and trial rights" and accepted his guilty pleas. At the request of defense counsel, the trial court ordered a presentence investigation report ("PSI") and mitigation report.

{¶13} On July 22, 2015, following receipt and review of the PSI and mitigation report, the trial court conducted the sentencing hearing. Prior to imposing sentence, the

trial court heard from Vinson, defense counsel and the state. Vinson apologized to his victims, his family and the court. Defense counsel addressed the court, referenced the PSI and mitigation reports and stated that he "would accept the findings" of the Court Psychiatric Clinic "without the need of any testimony from them." Defense counsel argued that Vinson's diagnosis of bipolar disorder combined with his drug and alcohol abuse suggested that "mental" issues may have contributed to Vinson's criminal conduct. He requested that Vinson's admission of his guilt and apology to those he had injured be considered and that he be given "the opportunity to maybe rejoin society with appropriate conduct going forward."

{¶14} The prosecutor also addressed the court. He briefly described each of the incidents in Vinson's "crime spree" and introduced a DVD containing footage from the security camera at Tom's Food Mart[3] to give "insight as to how Mr. Vinson conducts his crimes when he thinks no one is watching, when he thinks the video is destroyed."

{¶15} The trial court sentenced Vinson on each of the counts to which he had pled guilty as follows:

Count 2:    Aggravated robbery — 11 years; consecutive to any other sentence
            Three-year firearm specification — 3 years; consecutive to any other sentence

Count 6:    Aggravated robbery — Merged into Count 2
            Three-year firearm specification — Merged into
                    Count 2

---

[3]Although Vinson had attempted to destroy the security camera, the security camera footage had been recovered and reconstructed by the Internet Crimes Against Children Task Force.

Count 9: Kidnapping — 11 years; consecutive to any other sentence

Count 11: Aggravated robbery — 11 years; consecutive to any other sentence
One-year firearm specification — 1 year; consecutive to any other sentence

Count 12: Aggravated robbery — 11 years; concurrent to Count 11
One-year firearm specification — 1 year; concurrent to Count 11

Count 17: Intimidation of crime victim or witness — 36 months; consecutive to any other sentence
One-year firearm specification — 1 year; consecutive to any other sentence

Count 18: Intimidation of crime victim or witness — 36 months; concurrent to Count 17
One-year firearm specification — 1 year; concurrent to Count 17

Count 19: Vandalism — 12 months; consecutive to any other sentence

Count 21: Having weapons while under disability — 36 months

Count 23: Aggravated burglary — 11 years; consecutive to any other sentence
Three-year firearm specification — 3 years; consecutive to any other sentence

Count 25: Kidnapping — Merged into Count 23
Three-year firearm specification — Merged into Count 23

Count 29: Aggravated robbery — 11 years; consecutive to any other sentence
Three-year firearm specification — 3 years; consecutive to any other sentence

Count 32:      Having weapons while under disability — 36 months; concurrent to Count 29

Count 33:      Attempted murder — 11 years; consecutive to any other sentence
Three-year firearm specification — 3 years; consecutive to any other sentence

Count 39:      Kidnapping — Merged into Count 33
Three-year firearm specification — Merged into Count 33

Count 42:      Aggravated robbery — 11 years

Count 43:      Aggravated robbery — 11 years; concurrent to Count 44
One-year firearm specification — 1 year

Count 44:      Aggravated robbery — 11 years; concurrent to Count 43
One-year firearm specification — 1 year

Count 45:      Kidnapping — Merged into Count 44

Count 48:      Having weapons while under disability — 36 months; concurrent to any other sentence

Count 53:      Having weapons while under disability — 36 months; concurrent to any other sentence
Forfeiture of weapon specification — forfeiture of weapon

The trial court also imposed a $250 fine for each of the offenses, five years of mandatory postrelease control and costs.[4]

---

[4]As originally announced by the trial court in Vinson's presence at the sentencing hearing, the trial court's sentences amounted to an aggregate prison term of 84 years. Where a trial court does not state whether the sentences on two or more counts are to be served concurrently or consecutively, we presume they were run concurrently. R.C. 2929.41(A); *Vaughn*, 8th Dist. Cuyahoga No. 103330, 2016-Ohio-3320,¶ 15 ("If sentencing is ambiguous as to whether a sentence should be served concurrently or consecutively, the ambiguity must be resolved in favor of the defendant and the sentences must be served concurrently."), quoting *State v. Quinones*, 8th Dist. Cuyahoga No. 83720, 2004-Ohio-4485, ¶ 26. Applying this rule, because the trial court failed to specify whether the

**{¶16}** After the trial judge announced the sentences on each of the counts to which Vinson had pled guilty, there was confusion regarding the calculation of Vinson's aggregate prison term. The trial judge indicated that she thought Vinson had been sentenced to a total of 100 years in prison; the state indicated that it had calculated Vinson's aggregate prison term to be 94 years and defense counsel stated that, by his calculation, Vinson had been sentenced to an aggregate prison term of 84 years. Vinson was removed from the courtroom and the prosecutor and defense counsel had further discussions with the trial judge at sidebar regarding the calculation of the aggregate sentence imposed. During this sidebar discussion, the trial judge clarified that the sentence imposed on Count 21 (36 months) was to be served consecutively to all other sentences, that the sentence imposed on Count 42 was concurrent to the concurrent sentences imposed on Count 43 and 44 and that the sentences imposed on Counts 42, 43 and 44 (11 years plus one-year for the firearm specification) were to be served consecutively to all other sentences, resulting in an aggregate prison term of 99 years. After Vinson's sentences were clarified, Vinson was brought back to the courtroom to announce his aggregate sentence and to make consecutive sentence findings. Although the sentences imposed by the trial court at the sentencing hearing (after the clarifications during the sidebar discussions) totaled 99 years, when Vinson returned to the courtroom,

---

sentences imposed on Counts 21 and 42-44 were to be served concurrently or consecutively to the sentences imposed for other offenses, it would have been presumed — were it not for the sidebar discussion that followed — that the trial court had imposed concurrent sentences on Counts 21 and 42-44, resulting in an aggregate sentence of 84 years.

the trial judge informed him that he had been sentenced to a total of 95 years in prison.[5] The trial court then announced its findings in support of its imposition of consecutive sentences.

{¶17} On August 3, 2015, the trial court issued its sentencing journal entry. Although the trial court stated, during its sidebar discussion with counsel at the sentencing hearing, that the sentences imposed on Counts 42, 43 and 44 were to be served concurrently to one another but consecutively to all other sentences, its sentencing journal entry states: "COUNTS 42, 43 AND 44 ARE CONCURRENT TO EACH OTHER AND CONCURRENT TO ANY OTHER SENTENCE. ON COUNTS 43 AND 44 THE GUN SPECS ARE CONCURRENT TO EACH OTHER BUT CONSECUTIVE TO ANY OTHER GUN SPECS." As clarified during the sidebar discussion, the sentence journal entry indicated that the 36-month sentence on Count 21 was to be served consecutively to all other sentences. No aggregate prison term is stated in the sentencing journal entry; however, when the individual sentences set forth in the sentencing journal entry are totaled, it reflects an aggregate prison term of 88 years.

{¶18} Vinson appealed his convictions and sentences. On December 8, 2015, this court granted Vinson's motion to remand so that he could file a motion to vacate his

---

[5]Although Vinson does not raise the issue (and although the error will be remedied by the relief ordered in this case), we note that the trial court erred in modifying Vinson's sentence in his absence. Crim.R. 43(A) provides that the defendant "must be physically present at every stage of the criminal proceeding and trial, including * * * the imposition of sentence * * *." There is nothing in the record to suggest that Vinson waived his right to be physically present for the modification of his sentence "in writing or on the record" as required under Crim.R. 43(A)(3).

guilty pleas with the trial court.  On February 25, 2016, Vinson filed his motion to vacate his guilty pleas, arguing that he had entered his guilty pleas based on his counsel's recommendation and that if he had known that the trial court would sentence him to "more than 90 years in prison," he would not have entered his guilty pleas.  He also argued that the aggregate sentence he received should be vacated because it was excessive and unconstitutional and failed to take into consideration his age and "mitigating personal and psychological background."  The trial court denied the motion.

Vinson has raised the following four assignments of error for review:

> ASSIGNMENT OF ERROR I:
> The 90-year sentence Mr. Vinson received is contrary to law and violates the Eighth Amendment because it imposes on a teenager a term of years that precludes any possibility of release during his life expectancy.
>
> ASSIGNMENT OF ERROR II:
> Mr. Vinson's guilty plea is invalid because he did not enter it knowingly, intelligently, and voluntarily.
>
> ASSIGNMENT OF ERROR III:
> Mr. Vinson received ineffective assistance of counsel in connection with his guilty plea.
>
> ASSIGNMENT OF ERROR IV:
> The trial court abused its discretion by failing to allow the appellant to withdraw his guilty plea where the evidence he submitted in support of the motion established a manifest injustice.

For ease of discussion, we address Vinson's assignments of error out of order.

We address his second assignment of error first.

**Law and Analysis**

**Whether Vinson's Guilty Pleas Were Knowingly, Intelligently and Voluntarily Made**

{¶19} In his second assignment of error, Vinson argues that his guilty pleas were not knowingly, intelligently and voluntarily made and that the trial court erred in accepting his guilty pleas under Crim.R. 11(C) because he was "misled concerning the true extent of his sentencing exposure." He contends that in order to enter his guilty pleas "knowingly and voluntarily," he needed to be told both the maximum penalties for each count and the total sentencing exposure to which his pleas would potentially subject him, i.e., what the maximum aggregate sentence would be if the sentences on the offenses to which he would be pleading guilty were ordered to be served consecutively as opposed to concurrently.

{¶20} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996); *see also State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7. Crim.R. 11(C)(2) outlines the constitutional and procedural safeguards the trial court must follow when accepting a guilty plea in a felony case. It provides:

> (2) In felony cases the court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty

involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶21}** Thus, prior to accepting a guilty plea, a trial court must address the defendant "personally" and determine that the defendant is making the plea "voluntarily, with an understanding of the nature of the charges and the maximum penalty involved." Crim.R. 11(C)(2)(a). In considering whether a plea was entered knowingly, intelligently and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock,* 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7; *see also State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6.

**{¶22}** There is a distinction between constitutional rights and nonconstitutional rights when a defendant enters a guilty plea. As to the nonconstitutional aspects of Crim.R. 11(C)(2), which includes the defendant's right to be informed of the "maximum

penalty involved," substantial compliance is required. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 474, at ¶ 14; *Jackson* at ¶ 9. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

**{¶23}** Vinson does not dispute that the trial court properly advised him as to the maximum penalties he could receive on each of the individual counts to which he would be pleading guilty. However, he contends that because the trial court "gave Vinson no reason to believe that it could or would impose consecutive sentences on most of the 21 counts involved" and only "mentioned consecutive terms" when it explained the mandatory consecutive prison sentences on the firearm specifications associated with certain of the counts, he could not have understood that the trial court could "impose anything close to an aggregate sentence of nearly 100 years" and that his guilty pleas should, therefore, be vacated. We disagree.

**{¶24}** Where the imposition of consecutive sentences is discretionary with the trial court, the Ohio Supreme Court has held that "[f]ailure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary." *State v. Johnson*, 40 Ohio St.3d 130, 134, 532 N.E.2d 1295 (1988), syllabus ("[T]he trial court * * * carried out the specific mandate of Crim.R. 11(C) by stating to the defendant the exact maximum sentence for each of the

crimes as provided by law. There is no specific requirement in such rule that an explanation be made that any sentences as given may run consecutively * * * .").

**{¶25}** This court has consistently followed *Johnson* in concluding that Crim.R.11(C)(2)(a) does not require a trial court to advise a defendant of the potential for consecutive sentencing. *See, e.g., State v. Dansby-East*, 8th Dist. Cuyahoga Nos. 102656, 102657, 102658 and 102659, 2016-Ohio-202, ¶ 16-17 (trial court was not required to advise defendant of the "cumulative total of all of the prison terms for all of the offenses at the time of the guilty plea"); *State v. Dotson*, 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392, ¶ 12 (The Crim.R. 11(C)(2)(a) requirement of informing the defendant of the "maximum penalty" applies only to the "'maximum penalty' for the crime for which 'the plea' is offered" and does not apply "'cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.'"), quoting *Johnson* at 133; *State v. Van Horn*, 8th Dist. Cuyahoga No. 98751, 2013-Ohio-1986, ¶ 14 ("[T]he trial court was not required to tally all of the potential penalties for all of the offenses and apprise [defendant] of the cumulative total * * * before accepting the guilty plea. Further, the trial court was not required to inform [defendant] that the court may order him to serve any sentences imposed consecutively, rather than concurrently. Rather, in outlining all of the possible penalties for each of the charges * * *, the trial court substantially complied with its duty to notify him of the maximum penalty for each offense as required by Crim.R. 11(C), as it indicated the maximum penalty for each offense to which he pled guilty."); *State v. McKissic*, 8th Dist.

Cuyahoga Nos. 92332 amd 92333, 2010-Ohio-62, ¶ 16 (observing that "[t]his court has consistently followed *Johnson* to find substantial compliance in cases where the trial court failed to advise a defendant prior to accepting a plea that sentences might be imposed consecutively").

{¶26} In this case, the trial judge reviewed each count individually with Vinson, explained to Vinson the range of penalties including the maximum prison term associated with each count and confirmed with Vinson that he understood the charges and potential penalties. Before she commenced the plea colloquy, the trial judge told Vinson, if at any time during the plea hearing she or counsel said anything that he did not understand, found confusing or with which he disagreed, he should let her know. Vinson agreed that he would do so. At no point during the plea hearing did Vinson indicate to the trial court that there was anything he did not understand, found confusing or with which he did not agree related to the charges against him or his potential sentences. Vinson's responses to the trial court's questions and the totality of the circumstances supports the conclusion that he subjectively understood the consequences of his guilty pleas. As such, the trial court substantially, if not fully, complied with its obligations under Crim.R. 11(C)(2)(a) to "[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." The trial court's failure to specifically state that prison terms on the offenses to which Vinson was pleading guilty could be run consecutively did not preclude the trial court's acceptance of his plea as having been knowingly, intelligently and voluntarily made.

{¶27} Vinson's second assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶28} In his third assignment of error, Vinson contends that he was denied effective assistance of counsel because trial counsel (1) failed to give him "accurate advice" regarding his "realistic sentencing exposure" prior to the entry of his guilty pleas and (2) failed to effectively present mitigation evidence on his behalf during the sentencing hearing.

{¶29} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland* at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶30} A claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595

N.E.2d 351 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Where a defendant has entered a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offenses at issue and would have insisted on going to trial. *Williams* at ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). **Advice Relating to Sentencing Exposure**

{¶31} Vinson claims that his trial counsel was ineffective for advising him that he believed the trial court would sentence Vinson to "about 27 years" in prison if he accepted the plea deal offered by the state. Vinson claims that, as a result of this "inaccurate information," he was unable to "objectively or subjectively understand the consequences of [his] plea" and that if trial counsel had "accurately advised" him that his guilty pleas "could or would result in a more than life sentence," he would not have entered his guilty pleas.

{¶32} An attorney's mere inaccurate prediction of a defendant's sentence does not constitute ineffective assistance of counsel:

> A good faith but erroneous prediction of sentence by defense counsel does not render the plea involuntary. Where the representations made by defense counsel were hopeful, good faith estimates, not promises, the fact that defendant may have had expectations of leniency is not sufficient, absent evidence that the government induced such expectation, to justify withdrawal of the plea.

*State v. Sally*, 10th Dist. Franklin No. 80AP-850, 1981 Ohio App. LEXIS 10295, *10-11 (June 11, 1981); *see also State v. Longo*, 4 Ohio App.3d 136, 139-140, 446 N.E.2d 1145 (8th Dist.1982) (counsel's error in "predict[ing] a sentencing result based on an educated judgment" that "did not pan out" did not render his assistance ineffective); *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 10 (8th Dist.) ("A lawyer's mistaken prediction about the likelihood of a particular outcome after correctly advising the client of the legal possibilities is insufficient to demonstrate ineffective assistance of counsel."), *State v. McMichael*, 10th Dist. Franklin Nos. 11AP-1042, 11AP-1043 and 11AP-1044, 2012-Ohio-3166, ¶ 31 (counsel's "'mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim'"), quoting *State v. Glass*, 10th Dist. Franklin No. 04AP-967, 2006-Ohio-229, ¶ 34.

{¶33} In this case, the record reflects that trial counsel did nothing more than provide Vinson a good faith estimate or "educated guess" as to what his aggregate sentence might be in light of the relevant facts and circumstances. The record is clear that trial counsel made no promises to Vinson regarding the length of the sentence he would receive upon the entry of his guilty pleas. Trial counsel expressly stated at the sentencing hearing that he could not advise Vinson what his aggregate prison sentence might be other than to state that it would be at least nine years due to the mandatory consecutive sentences associated with the firearm specifications to which he would be pleading guilty. Vinson indicated that he was satisfied with his trial counsel's

representation and expressly acknowledged at the sentencing hearing that no promises had been made to him to induce him to change his pleas other than what had been stated on the record.

{¶34} Furthermore, Vinson has not established that he was prejudiced as a result of any misinformation he may have received from his trial counsel regarding his potential sentences. The trial court conducted a full Crim.R. 11 colloquy where it informed Vinson, prior to the entry of his guilty pleas, of the maximum possible sentence on each of the counts to which he was pleading guilty. Once he was informed by the trial court of the potential maximum sentences he could receive, he could have decided not to change his pleas and asked to proceed to trial instead, but he did not. *State v. Reed*, 8th Dist. Cuyahoga No. 91767, 2009-Ohio-2264, ¶ 35.

{¶35} Accordingly, Vinson was not denied effective assistance of counsel based on trial counsel's faulty prediction of his sentence.

**Mitigation Evidence**

{¶36} Vinson also contends argues that his counsel was ineffective with respect to his presentation of mitigation evidence and that if trial counsel had investigated and more effectively presented mitigation evidence at the sentencing hearing, "it would have caused the trial court to impose substantially shorter sentence[s]."

{¶37} "'The presentation of mitigating evidence is a matter of trial strategy,' * * * even if counsel's chosen strategy proves unsuccessful." *State v. McKelton*, Slip Opinion No. 2016-Ohio-5735, ¶ 304, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971,

804 N.E.2d 433, ¶ 189; *see also State v. Otte*, 8th Dist. Cuyahoga No. 84455, 2005-Ohio-100, ¶ 22, citing *State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997). Because there are "countless ways to provide effective assistance in any given case," judicial scrutiny of a lawyer's performance must be "highly deferential." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. "'[D]ecisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers.'" *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 6, quoting *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18. A reviewing court, therefore, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound * * * strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶38} At the request of defense counsel, the trial court referred Vinson for a PSI and to the Court Psychiatric Clinic for a mitigation report. The mitigating factors identified by Vinson in his brief were before the court in the PSI and mitigation report, which defense counsel referenced during his argument at sentencing. Even if trial counsel had been deficient in his presentation of mitigation evidence — given that the mitigating factors identified in Vinson's brief were already before the court in the PSI and mitigation report — Vinson has not shown a reasonable probability that the outcome of

his sentencing would have been different. Accordingly, Vinson's third assignment of error lacks merit and is overruled.

**Motion to Vacate Guilty Pleas**

{¶39} In his fourth assignment of error, Vinson contends that the trial court abused its discretion in denying Vinson's motion to vacate his guilty pleas because "the sentence imposed here was more than three times what Mr. Vinson had been given reason to expect before he decided to enter the guilty plea[s]."

{¶40} The withdrawal of a guilty plea is governed by Crim.R. 32.1, which states:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶41} Because Vinson filed his motion to withdraw his guilty pleas after sentencing, he was obligated to demonstrate withdrawal of his guilty pleas was necessary to correct "manifest injustice." A manifest injustice is a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner,* 83 Ohio St.3d 203, 208, 699 N.E.2d 83, that is evidenced by "an extraordinary and fundamental flaw in the plea proceeding," *State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 8.

{¶42} The determination of whether the defendant has met his burden of establishing "a manifest injustice" is within the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus.

Accordingly, we will not reverse a trial court's ruling on a postsentence motion to withdraw a guilty plea unless the court abused its discretion. *Id.* An abuse of discretion occurs where the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶43} Ineffective assistance of counsel can constitute a manifest injustice warranting a withdrawal of a guilty plea. *See, e.g., State v. Montgomery*, 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4; *State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 8. However, for the reasons stated above, Vinson has not shown that he was denied effective assistance of counsel.

{¶44} Vinson has shown nothing more than that he had a "change of heart" after learning the length of his aggregate prison sentence. A defendant's change of heart is insufficient to demonstrate manifest injustice, particularly where the change of heart is based upon a dissatisfaction with the sentence imposed. *See, e.g., State v. Mathis*, 8th Dist. Cuyahoga No. 100342, 2014-Ohio-1841, ¶ 23 ("The court will not permit a defendant to withdraw his guilty plea merely because he receives a harsher penalty than he subjectively expected. * * * As our review of the case law indicates, the courts frown upon allowing a defendant to plead guilty to test the potential punishment and withdraw when the sentence was unexpectedly severe."); *see also State v. Britton*, 8th Dist. Cuyahoga No. 98158, 2013-Ohio-99, ¶ 20; *State v. Berry*, 2d Dist. Greene No. 2013-CA-34, 2014-Ohio-132, ¶ 30.

**{¶45}** As Vinson failed to show any manifest injustice, the trial court did not abuse its discretion in denying Vinson's motion to vacate his guilty pleas. Vinson's fourth assignment of error is overruled.

**Challenges to Sentences**

**{¶46}** In his first assignment of error, Vinson argues that his aggregate prison sentence is cruel and unusual punishment in violation of the Eighth Amendment and is contrary to law because it "imposes on a teenager a term of years that precludes any possibility of release during his life expectancy." Specifically, Vinson contends that the Eighth Amendment "forbids" the imposition of a de facto life sentence on a teenager who did not commit murder or aggravated murder and that the sentence, which leaves no "room for rehabilitation and redemption," particularly in light of mitigating circumstances, is contrary to law. He argues that although "his conduct was reprehensible," "none of his victims perished" and that he should have an opportunity to be rehabilitated and contribute to society.

**Constitutional Challenge to Sentences**

**{¶47}** The Eighth Amendment's prohibition on cruel and unusual punishments "imposes two separate limitations": (1) "a requirement of proportionality" and (2) "prohibition against specific torturous methods of punishment." *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 36-37. "In noncapital cases, the Eighth Amendment proportionality principle is narrow and 'forbids only extreme sentences' that are grossly disproportionate to the crime." *Id.*, quoting *Graham v.*

*Florida*, 560 U.S. 48, 59-60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). With respect to gross disproportionality, "'[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person,' and furthermore that 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 14, quoting *State v. Weitbrecht*, 86 Ohio St.3d 368, 371, 715 N.E.2d 167 (1999).

**{¶48}** Vinson's constitutional challenge to his sentences is based on *Graham, supra*, *Miller v. Alabama*, 567 U.S. ____, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2012), *Montgomery v. Louisiana,* 577 U.S. ___, 136 S.Ct. 718, 193 L.Ed.2d 599, and *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.2d 890.

**{¶49}** In *Graham,* the United States Supreme Court held that a juvenile offender who did not commit homicide could not be sentenced to life in prison without parole because "when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability" due to the role "[a]ge and the nature of the crime each bear on the analysis." *Graham,* 560 U.S. at 50. In *Miller*, the United States Supreme Court held that a sentencing scheme that mandates a sentence of life in prison without the possibility of parole for a juvenile homicide offender violates the Eighth Amendment's prohibition on cruel and unusual punishment and that a sentencing court must consider a juvenile offender's youth and attendant characteristics

before sentencing a juvenile to life in prison without parole. *Miller* at 418. In *Roper*, the United States Supreme Court held that the Eighth and Fourteenth Amendments prohibit imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. *Roper* at 578. In *Montgomery,* the United States Supreme Court recognized that under *Miller,* "sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption,'" *Montgomery*, at 734, 736-737, quoting *Miller* at 2469, and that *Miller's* holding "announced a new substantive rule of constitutional law" that is retroactive, *Montgomery* at 736. In *Long*, the Ohio Supreme Court held that a trial court, in exercising its sentencing discretion for aggravated murder under R.C. 2929.03(A), "must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole" and that "[t]he record must reflect that the court specifically considered the juvenile offender's youth as a mitigating factor at sentencing when a prison term of life without parole is imposed." *Long* at paragraphs one and two of the syllabus.

{¶50} In each of these cases, the court pointed to "fundamental differences between juvenile and adult minds," *see, e.g., Graham* at 68, that render juveniles "constitutionally different from adults for purposes of sentencing," *Miller* at 2464. As the United States Supreme Court explained in *Miller*:

> First, children have a "'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S. at 569, 125 S.Ct. 1183, 161 L.Ed.2d 1. Second, children "are more vulnerable * * * to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a

child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.* at 570, 125 S.Ct. 1183, 161 L.Ed.2d 1. * * * [T]he distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. * * * [I]n imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult. * * *

*Miller* at 2464-2468. The Ohio Supreme Court relied on *Miller* in reaching its decision in *Long*. *Long* at ¶ 1, 11-14.

{¶51} Vinson, however, is not a "juvenile offender." Vinson asserts that "the holdings of *Miller, Roper* and *Graham* on their face apply to individuals aged 18 and younger," but this is not true. Although "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," *Roper* at 574, in each of these cases, the United States Supreme Court has explicitly identified age 18 as the "bright-line" divide between juveniles and adults when considering developmental differences for purposes of the Eighth Amendment. "Juvenile offenders" are those who were younger than 18 at the time they committed their offenses; offenders who were 18 or older at the time the committed their offenses are adult offenders. Vinson was 18 at the time he committed the crimes at issue. He was an adult. Therefore, these cases do not apply to him and he was not entitled to the special sentencing considerations afforded juvenile offenders under the Eighth Amendment.

{¶52} The Tenth District recently considered a similar argument in *State v. Phipps*, 10th Dist. Franklin No. 15AP-524, 2016-Ohio-663. In that case, the defendant — who was 19 at the time he committed the offenses at issue — pled guilty to 21 counts,

including aggravated robbery and kidnapping, arising out of a series of robberies, burglaries and home invasions. *Id.* at ¶ 3, 35. He was sentenced to an aggregate prison term of 150 years. *Id.* at ¶ 3. The defendant argued, based on *Miller*, *Graham* and *Roper,* that the trial court erred in failing to consider his "relative youth" as a relevant factor under R.C. 2929.12 and that his youth should have been considered during sentencing because "he lacked * * * maturity and had an underdeveloped sense of responsibility." *Id.* at ¶ 33, 35. The Tenth District rejected the defendant's argument, noting that there was no authority to support the extension of *Roper*, *Graham* and *Miller* to the defendant, who was not a juvenile at the time he committed the offenses at issue. *Id.* at ¶ 37, 39. As the court explained:

> We are unaware of, and appellant fails to point to, any pertinent legal authority to support the extension of *Roper*, *Graham*, and *Miller* to persons who were not juveniles at the time of the commission of the offense. * * * [I]n *Roper*, *Graham*, and *Miller*, the United States Supreme Court explicitly referred to the age of 18 as the divide between juveniles and adults when considering developmental differences under the Eighth Amendment. * * * The United States Supreme Court explained its use of the age of 18 to establish the divide as follows:
>
>> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. * * * The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.
>>
>> *Roper* at 574.

Following *Miller*, the Sixth Circuit considered whether to extend *Miller* to persons over the age of 18. *United States v. Marshall*, 736 F.3d 492 (6th Cir.2013). The court found that "[c]onsiderations of efficiency and certainty require a bright line separating adults from juveniles" and that "[f]or purposes of the Eighth Amendment, an individual's eighteenth birthday marks that bright line."   *Id.* at 500. * * *

[O]n the facts of this case, we cannot agree that the trial court erred by refusing to consider appellant's age through extension of the holdings in *Roper*, *Graham*, and *Miller* in the determination of his sentence.

*Phipps* at ¶ 37-40; *see also State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2016-Ohio-3174, ¶ 57-63 (trial court's sentencing of 23-year-old defendant to life in prison without the possibility of parole for aggravated murder did not violate the Eighth Amendment's prohibition against cruel and unusual punishment); *State v. Rolland*, 7th Dist. Mahoning No. 12 MA 68, 2013-Ohio-2950, ¶ 15 ("*Roper*, *Graham* and *Miller* are inapplicable" to a defendant who was not a juvenile at the time of the commission of the offense because the protections at issue in those cases "apply only to juvenile offenders.").

{¶53}   Like the defendant in *Phipps,* Vinson was sentenced to a lengthy aggregate prison sentence for similar offenses arising out of a series of robberies, burglaries and home invasions, that did not include murder.   Like the defendant in *Phipps*, Vinson "offers no persuasive justification for the extension of the reasoning" in *Roper*, *Miller* and *Long* to the facts of this case.   *Id.* at ¶ 39.   As such, the same reasoning applies.

{¶54} Furthermore, "it is not the aggregate term of incarceration but, rather, the individual sentences that are relevant for purposes of Eighth Amendment analysis."

*State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 22 (aggregate prison term of 134 years, which resulted from the consecutive imposition of the individual sentences did not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution). The Ohio Supreme Court analyzes cruel and unusual disproportionality claims arising from a lengthy aggregate term of consecutive sentences based on the individual sentences imposed on each count and not the "cumulative impact of multiple sentences imposed consecutively." *Hairston* at ¶ 20. "Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *Id.*; *State v. Flagg*, 8th Dist. Cuyahoga No. 95958, 2011-Ohio-5386, ¶ 15.

**{¶55}** Trial courts have discretion to impose a prison sentence within the statutory range for each offense. *Hairston* at ¶ 21, citing *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Therefore, "'[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.'" *Hairston* at ¶ 21, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). Vinson does not claim that his sentence on any count is disproportionate to the offense and has not challenged the trial court's imposition of consecutive sentences. If his individual sentences are not "grossly disproportionate," his aggregate sentence cannot be "grossly disproportionate" simply because the individual sentences are run consecutively. *Hairston* at ¶ 20-22.

**{¶56}** In this case, Vinson committed a crime spree consisting of five armed robberies, involving multiple victims, and an attempted murder of a man he shot five times. Vinson threatened and terrorized his victims, ultimately pleading guilty to 21 felonies, including attempted murder, aggravated robbery, aggravated burglary and kidnapping. There is no dispute that each of Vinson's individual prison sentences are within the applicable statutory range for the offense. His individual sentences are not "grossly disproportionate" to the crimes or "shocking to a reasonable person or to the community's sense of justice" and, therefore, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hairston* at ¶ 22; *see also State v. Williams*, 8th Dist. Cuyahoga Nos. 103363 and 10336, 2016-Ohio-3456, ¶ 6 (A sentence does not violate the Eighth Amendment's prohibition against cruel and unusual punishment if the trial court sentences the defendant on each offense within the applicable statutory range for the degree of felony charged.). Accordingly, Vinson's aggregate prison sentence is not cruel and unusual punishment under the Eighth Amendment.

**Claim that Aggregate Sentence Is Contrary to Law**

**{¶57}** Vinson also argues that his aggregate sentence is contrary to law and should be vacated or modified because it "is so long that it utterly forecloses the opportunity for rehabilitation" and "fails to comply with" the "purposes of the Ohio [s]entencing [s]tatutes." Specifically, he contends that, when sentencing him, the trial court failed to consider, or give sufficient weight to, the evidence of mitigating circumstances he presented, including the evidence of the abuse and neglect Vinson experienced as a child,

the tragic circumstances under which his mother died on his 13th birthday, his older brother's suicide while Vinson was in Ohio Department of Youth Services in 2013 and his "compromised mental health," i.e., his suffering from bipolar/mood disorder and attention deficit disorder/hyperactivity and his abuse of drugs and alcohol at the time he committed the offenses at issue. Vinson asserts that, given his age and personal history, a "proper sentence" would "leav[e] room for rehabilitation and redemption" rather than "forever bar[ring] this teenager offender from even hoping" that he could ever "offer a positive contribution to society." Vinson's arguments are meritless.

{¶58} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21-23. Under R.C. 2953.08(G)(2), an appellate court must "review the record, including the findings underlying the sentence * * * given by the sentencing court." An appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate a sentence and remand the matter to the trial court for resentencing if it "clearly and convincingly" finds either that: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant" or (2) "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2); *Marcum* at ¶ 1, 21-23. A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing

factors set forth in R.C. 2929.12. *See, e.g., State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58; *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 8, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10. When a sentence is imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12, "[a]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23.

**{¶59}** As noted above, Vinson does not challenge any of individual prison sentences he received and, specifically, does not contend that any of those sentences were outside the applicable statutory range. Rather, he challenges his aggregate sentence, which is the result of the trial court's imposition of multiple consecutive sentences. As this court explained in *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7:

> There are two ways that a defendant can challenge consecutive sentences on appeal. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2014-Ohio-2527, ¶ 16, 15 N.E.3d 892. Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Nia*.

Vinson, however, does not challenge his aggregate sentence on either of these grounds. Rather, he argues that, based on his age and the other mitigating evidence he presented to the trial court, the record clearly and convincingly demonstrates that his aggregate prison

sentence is inconsistent with the trial court's obligation under R.C. 2929.11 to impose a sentence that is reasonably calculated to achieve the purposes of felony sentencing "using the *minimum sanctions*" and is, therefore, contrary to law. (Emphasis added.)

{¶60} R.C. 2929.11 provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve" two "overriding purposes" of felony sentencing: "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A)-(B). The statute further provides that "[t]o achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). A court imposing a sentence for a felony "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A). The sentencing court must consider various seriousness factors set forth in R.C. 2929.12(B) and (C) and recidivism factors set forth in R.C. 2929.12(D) and (E) in determining the most effective way to comply with the purposes of sentencing set forth in R.C. 2929.11. Among the factors the trial court must consider in imposing a felony sentence is whether there are any substantial mitigating factors.

{¶61} Although the trial court must *consider* the purposes of felony sentencing set forth in R.C. 2929.11 as well as the sentencing factors set forth in R.C. 2929.12 when

sentencing a defendant on a felony, the trial court is not required to use particular language or make specific findings on the record to demonstrate its consideration of those purposes, principles and factors. *See, e.g., State v. Gaines*, 8th Dist. Cuyahoga No. 103476, 2016-Ohio-4863, ¶ 11; *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 72. It is enough that the trial court state, in its sentencing entry, that it considered the required factors. *See, e.g., Gaines* at ¶ 11.

{¶62} In this case, the trial court stated in its sentencing journal entry that: "The Court considered all required factors of the law. The Court finds that prison is consistent with the purpose of R.C. 2929.11." The record also reflects that before imposing Vinson's sentence, the trial court reviewed the PSI and mitigation report that detailed the circumstances Vinson identifies in his brief. This was sufficient to establish that the trial court considered all of the relevant sentencing factors in sentencing Vinson and that it fulfilled its obligations under R.C. 2929.11 and 2929.12. *See, e.g., Gaines* at ¶ 11; *Sutton* at ¶ 72. Accordingly, Vinson's sentences were not clearly and convincingly contrary to law based on the trial court's failure to consider the purposes of felony sentencing set forth in R.C. 2929.11 and the sentencing factors, including the mitigating factors, set forth in R.C. 2929.12.

{¶63} As this court stated in *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543, we are unable to review Vinson's sentence as argued:

> A sentence within the bounds of the law cannot * * * be deemed contrary to law because a defendant disagrees with the trial court's discretion to individually weigh the sentencing factors. As long as a trial court

considered all sentencing factors, the sentence is not contrary to law and the appellate inquiry ends.* * *

The *Marcum* decision does not expand R.C. 2953.08(G)(2) to allow appellate courts to independently weigh the sentencing factors in appellate review. *Marcum* only alters the appellate sentencing review inasmuch as appellate courts must now focus on R.C. 2953.08 as the source and limits of our authority. * * *

We can only * * * determine whether the trial court considered the sentencing factors and sentenced within the statutory range. We cannot independently determine the weight given to each factor to arrive at a different sentencing conclusion or attempt to divine what factors the trial court deemed more relevant in the absence of specific findings. * * *

*Id.* at ¶ 12-14.

**{¶64}** Accordingly, R.C. 2929.11(A) cannot be used as a vehicle to "resentence" Vinson based on our own weighing of the sentencing factors and view of the mitigating evidence presented by Vinson. *See also State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326, ¶ 9 (concluding that because the R.C. 2929.12 factors are "specifically stated to apply to 'a sentence' that is to be imposed," "R.C. 2929.12 guides a sentencing judge's discretion only on individual counts * * * [s]o R.C. 2929.12 is not statutorily applicable to consecutive sentencing issues.").

**{¶65}** It bears repeating that Vinson does not challenge his individual prison sentences; he objects to the lengthy aggregate sentence he received as a result of the trial court's imposition of multiple consecutive sentences. Although the particular arguments raised by Vinson lack merit, we nevertheless find that the trial court's imposition of consecutive sentences is contrary to law.

**{¶66}** This court may recognize plain error, sua sponte, to prevent a miscarriage of justice. *See State v. Noernberg*, 8th Dist. Cuyahoga No. 97126, 2012-Ohio-2062, ¶ 31; *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992) (observing that Crim.R. 52 "allows the appellate court, at the request of appellate counsel or sua sponte, to consider a trial error that was not objected to when that error was a 'plain error'"); Crim.R. 52(B).

**{¶67}** In Ohio, there is a presumption that prison sentences should be served concurrently unless the trial court makes the findings outlined in R.C. 2929.14(C)(4) to warrant consecutive service of the prison terms. *State v. Primm*, 8th Dist. Cuyahoga No. 103548, 2016-Ohio-5237, ¶ 64, citing *State v. Cox*, 8th Dist. Cuyahoga No. 102629, 2016-Ohio-20, ¶ 3; R.C. 2929.41(A). Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that such sentences are not disproportionate to the seriousness of the conduct and to the danger the offender poses to the public and that at least one of the following also applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶68}** The trial court must both make the statutory findings required for consecutive sentences at the sentencing hearing and incorporate those findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. To make a "finding" under the statute, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). A trial court need not give a "talismanic incantation of the words of the statute" when imposing consecutive sentences, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

**{¶69}** In this case, although all of the required statutory findings were incorporated in the trial court's sentencing journal entry, a review of the record reveals that the trial court failed to make a finding at the sentencing hearing that consecutive sentences are not disproportionate to the seriousness of Vinson's conduct. At the sentencing hearing, the trial court announced/set forth its findings in support of the imposition of consecutive sentences as follows:

> THE COURT: * * * [T]he Court is going to make these findings so it could help to understand your sentence. That consecutive sentences are necessary to protect the public from future crime. That consecutive sentences are necessary to punish the defendant. The Court finds that

consecutive sentences are not disproportionate to the danger the offender poses to the public. And the Court finds that your history indicates that consecutive sentences are necessary to protect the public from future crimes.

* * *

**{¶70}** Thus, the trial court made no specific finding, during the sentence hearing, that consecutive sentences were not disproportionate to the seriousness of Vinson's conduct. Nor did the trial court make any other statements during the sentencing hearing from which we could "discern" a finding that consecutive sentences are not disproportionate to the seriousness of Vinson's conduct. *See, e.g., Kirkman*, 2016-Ohio-5326, at ¶ 4 ("While we prefer that the sentencing judge make separate and distinct findings under R.C. 2929.14(C)(4), we have noted that [*Bonnell*] * * * took a more 'relaxed' approach to those findings, finding that the requisite findings could be made if the reviewing court could 'discern' them from statements made by the sentencing judge."), citing *State v. Gum*, 8th Dist. Cuyahoga No. 101496, 2015-Ohio-1539, ¶ 15, and *State v. Jackson*, 8th Dist. Cuyahoga No. 102394, 2015-Ohio-4274, ¶ 36.

**{¶71}** Where, as here, the record clearly and convincingly demonstrates that the trial court failed to make all of the findings required under R.C. 2929.14(C)(4) before imposing consecutive sentences, the imposition of consecutive sentences is contrary to law and constitutes plain error. *See Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 37; *State v. Watts*, 8th Dist. Cuyahoga No. 103568, 2016-Ohio-4960, ¶ 4; *State v. Dickerson*, 11th Dist. Ashtabula No. 2013-A-0046, 2015-Ohio-938, ¶ 64, citing *State v. Carter*, 2d Dist. Champaign No. 2005-CA-24, 2006-Ohio-984, ¶ 3; *State v.*

*Adams*, 10th Dist. Franklin No. 13AP-783, 2014-Ohio-1809, ¶ 7; *see also State v. Davis*, 8th Dist. Cuyahoga No. 103348, 2016-Ohio-1127, ¶ 13 (rejecting argument that defendant "waived the right to have the judge impose a lawful sentence," reasoning that "'[a] failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law'" and that "'[e]very judge has a duty to impose lawful sentences'"), quoting *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2013-Ohio-5424, ¶ 22, and *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 27). Although Vinson does not dispute that his conduct was "reprehensible," that fact alone does not establish a basis for imposing consecutive sentences. The requisite findings must be made and the record must support the findings required for the imposition of consecutive sentences. *See, e.g., Johnson*, 2016-Ohio-1536, at ¶ 23-26 (modifying consecutive sentences of 25 years to life in prison to concurrent sentences where although defendant's conduct was "heinous and terrible," defendant's conduct as set forth in the record did not "reflect such a seriousness and danger to the public that 50 years to life in prison is necessary to protect the public from him").

**{¶72}** Accordingly, we vacate the trial court's imposition of consecutive sentences and remand the matter for the trial court to consider whether consecutive sentences are appropriate pursuant to R.C. 2929.14(C)(4) and, if so, to make the proper findings on the record at the sentencing hearing and incorporate those findings into its sentencing entry. Vinson's first assignment of error is sustained in part and overruled in part.

**{¶73}** Judgment affirmed in part; vacated in part; remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION;
MARY J. BOYLE J., CONCURS IN JUDGMENT ONLY WITH LEAD OPINION AND CONCURS WITH SEPARATE OPINION.
SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

**{¶74}** I concur with the lead opinion except for the discussion provided in ¶ 59-64, which I believe is unnecessary for two reasons. The sentencing factors are not a mandatory consideration for consecutive sentencing review. *State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326. In addition, the majority is reversing the imposition of consecutive service, rendering any discussion of whether the record supports the finding premature. Further, I am compelled to note that the only matter being remanded to the trial court is the consideration of the need for consecutive sentences. No other sentencing issue can be considered on remand, including the terms imposed on all individual sentences.