[Cite as *State v. Saxon*, 2023-Ohio-306.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                         No. 111493

    v.                                       :

MARK A. SAXON, JR.,                     :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-661684-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and James Gallagher, Assistant Prosecuting Attorney, *for appellee*.

Flowers & Grube, Melissa A. Ghrist, and Louis E. Grube, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Mark Saxon ("Saxon"), appeals his sentence and claims the following errors:

1. The trial court committed plain error by imposing consecutive sentences that the record does not clearly and convincingly support.

2. The trial court committed plain error by imposing two postrelease control periods consecutively to each other.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Saxon was charged with one count of kidnapping in violation of R.C. 2905.01(B)(2), a first-degree felony; one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; one count of domestic violence, in violation of R.C. 2919.25(A), a first-degree misdemeanor; two counts of child endangering in violation of R.C. 2919.22(A), first-degree misdemeanors; and one count of attempted having weapons while under disability in violation of R.C. 2923.13(A)(2), a fourth-degree felony. The kidnapping, felonious assault, and having weapons while under disability charges included one-, 18-month, and three-year firearm specifications as well as notice of prior conviction and repeat-violent-offender specifications. Those charges also included a forfeiture specification for the firearm used in the crimes.

{¶ 4} The charges arose from an incident in which the victim, who is the mother of Saxon's youngest child, told police that Saxon used force to restrain her and that he threatened to shoot her. Since there were two children present when Saxon threatened the victim with a firearm, the state alleged that Saxon recklessly endangered the safety of the children. The indictment further alleged that Saxon had previously been convicted of felonious assault with a one-year firearm specification in 2015.

{¶ 5} Saxon pleaded guilty to one count of attempted abduction with the forfeiture specification, a fourth-degree felony in violation of R.C. 2923.02 and 2905.02(A)(1), as amended in Count 1; one count of domestic violence as originally charged in Count 3; and one count of attempted having weapons while under disability with the forfeiture specification, as charged in Count 6. The remaining counts and specifications were nolled.

{¶ 6} At the plea hearing, the prosecutor explained that the victim recanted her story after the grand jury indicted Saxon. The victim originally reported that Saxon struck her multiple times in the head and body with his fists and threatened to kill her with a firearm. Although she was not treated for specific injuries, she went to MetroHealth Hospital because she thought she was having a miscarriage as a result of the beating. There is no evidence in the record to confirm whether she sustained a miscarriage other than the victim's statement to police that she started bleeding from her vagina shortly after the assault. The victim subsequently told prosecutors that Saxon did not hit her with the weapon. After taking the guilty pleas, the court requested a presentence-investigation report and scheduled sentencing for a later date.

{¶ 7} At the sentencing hearing, the prosecutor summarized the victim's original statement for the court. The victim initially told police that Saxon began driving recklessly after leaving a family party, pulled into an alley, took her out of the car, and "struck her multiple times with closed fists." (Tr. 32.) She further alleged that after they returned home, Saxon forced her into a bedroom where he

continued to beat her. He also threatened to kill her and the children with a loaded gun. (Tr. 32-33; presentence-investigation report.) The victim left the house and called the police.

{¶ 8} Saxon admitted, through his attorney, that he used force to remove the victim from a family party because she was intoxicated and that he has anger-management issues. (Tr. 30-31.) Saxon told the court that the victim put the car in park and hit him while he was driving. (Tr. 36.) He denied that he ever assaulted the victim and claimed that everything she told the police "was a lie." (Tr. 36.) Saxon explained:

> She said that I used a gun. I didn't use no gun or point no gun at my children, Your Honor. We was in the house, she was trying to get me removed from the house. I didn't want to leave. She end up leaving, then the police came and got me.

(Tr. 36-37.)

{¶ 9} Defense counsel advised the court that Saxon was apologetic for using physical force to remove the victim from the party and recognized that he needed treatment for his anger issues. (Tr. 31.) Counsel asked the court to impose community-control sanctions or, if the court were to impose a prison term, he requested incarceration at a community-based correctional facility so he could receive job training and treatment for his anger issues. (Tr. 31.)

{¶ 10} However, the court asked defense counsel if he had read the presentence-investigation report, which described the details of the events, including the beating that continued for a lengthy period of time in two different

locations. The presentence-investigation report also noted that the victim may have suffered a miscarriage as a result of the beating and that Saxon threatened the kill the victim and the children with the loaded gun. Defense counsel acknowledged that he read the presentence-investigation and that he had no "additions, corrections, or deletions" to make to the report. (Tr. 29-30.) Indeed, defense counsel conceded that the facts and circumstances of the case "look horrendous." (Tr. 30.)

{¶ 11} The prosecutor told the court that the victim did not attend the plea or sentencing hearings, but she wanted Saxon to accept the plea and she did not want him to be incarcerated. The state did not request a prison term and indicated it would defer to the trial court regarding sentencing. (Tr. 33.)

{¶ 12} The trial court stated that it reviewed the presentence-investigation report and the institutional summary from Saxon's prior prison term. The institutional summary indicated that Saxon had 52 altercations during his prior five-year prison term and that he received 52 "write ups." (Tr. 37.) Referring to the number of write-ups, the court observed: "That's the most I've ever seen in 31 years of being on this bench." As previously stated, the presentence-investigation report detailed the events giving rise to the original charges as well as Saxon's lengthy criminal record.

{¶ 13} Based on the victim's statement, Saxon's concessions, and his criminal record, the court concluded that consecutive sentences were necessary to protect the public from future crimes. The court noted that consecutive sentences would total three years and found that the three years were not disproportionate to the

seriousness of Saxon's conduct and the danger he poses to the public. (Tr. 38.) The court also observed that Saxon committed the offenses in this case while he was on postrelease control. Accordingly, the court sentenced Saxon to 18 months on Count 1; time served on Count 3; and 18 months on Count 6, to be served consecutively for an aggregate three-year prison term. Saxon now appeals his sentence.

## II. Law and Analysis

### A. Consecutive Sentences

{¶ 14} In the first assignment of error, Saxon argues the trial court committed plain error by imposing consecutive sentences that the record clearly and convincingly does not support.

{¶ 15} Saxon did not object to the imposition of consecutive sentences in the trial court and has, therefore, forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Crim.R. 52(B) authorizes appellate courts to correct "'[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *Id*. at ¶ 22, quoting Crim.R. 52(B). To prevail under a plain error analysis, the appellant bears the burden of demonstrating that, but for the error, the outcome of the trial would clearly have been different. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 16} Saxon contends the court's findings in justification of his consecutive sentence are not supported by the record. R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences

are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

>    (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
>    (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offenders conduct.
>
>    (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 17} A trial court is not required to state its reasons to support its findings, nor is it required to recite verbatim the statutory language, "'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶ 18} R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 19} In *State v. Gwynne*, Slip Opinion No. 2021-1033, the Ohio Supreme Court clarified how consecutive sentences should be reviewed and held that "consecutive-sentence findings are not simply threshold findings that, once made, permit any amount of consecutively stacked individual sentences." *Id.* at ¶ 1. The court also held that "appellate review of consecutive sentences under R.C. 2953.08(G)(2) does not require appellate courts to defer to the sentencing court's findings in any manner." *Id.* The court explained:

> [T]he appellate standard of review under R.C. 2953.08(G)(2) is not whether the trial court abused its discretion when it imposed consecutive sentences and intermediate deference to the trial court's findings is not required. An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds—in other words, has a firm conviction or belief—that the evidence in the record does not support the consecutive-sentence findings that the trial court made. To reiterate, R.C. 2953.08(G)(2)'s clear-and-convincing standard does not permit— much less require or expect—an appellate court to modify or vacate an order of consecutive sentences only when it is unequivocally certain that the record does not support the findings. It requires that the appellate court vacate or modify the order if, upon review of the record, the court is left with a firm belief or conviction that the findings are not supported by the evidence.
>
> When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in

the record for the consecutive-sentence findings that the trial court made. If after reviewing the applicable aspects of the record and what, if any, evidence it contains, the appellate court finds that there is no evidence in the record to support the consecutive sentence findings, then the appellate court must reverse the order of consecutive sentences. A record that is devoid of evidence simply cannot support the findings required by R.C. 2929.14(C)(4); there must be an evidentiary basis upon which these findings rest.

The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings. This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings. An appellate court may not, for example, presume that because the record contains some evidence relevant to and not inconsistent with the consecutive-sentence findings, that this evidence is enough to fully support the findings. As stated above, R.C. 2953.08(G)(2) explicitly rejects this type of deference to a trial court's consecutive-sentence findings. Instead, a de novo standard of review applies to whether the evidence in the record supports the findings that were made. Under this standard, the appellate court is, in fact, authorized to substitute its judgment for the trial court's judgment if the appellate court has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results.

{¶ 20} The court sentenced Saxon to an aggregate three-year consecutive sentence. Saxon does not dispute that the trial court made the necessary findings; he contends the findings are not supported by the record because the victim recanted her claim that Saxon assaulted her with a firearm, and he denied that he assaulted her.

{¶ 21} The trial court found that consecutive sentences were necessary to protect the public from future crime. (Tr. 37.) Saxon admitted at the sentencing hearing that he used force to remove the victim from the family party and that he

refused to leave the victim's home during an altercation. He also admitted that he needs treatment for anger issues. (Tr. 30-31.)

{¶ 22} In addition, Saxon has a criminal record of violent crimes and previously served a prison sentence for felonious assault. He was involved in 52 altercations while he was in prison between 2015 and 2020. The uncontested presentence-investigation report also established that Saxon brutally beat the victim and threatened to kill her and the children with a loaded gun. Police seized a firearm from Saxon's possession and, because of his prior convictions, he was not allowed to possess the firearm. These actions reveal a pattern of disrespect for the law and for the safety of others. Although the victim recanted her accusations against Saxon, the trial court had reason to doubt the veracity of the victim's recantation under these circumstances, and the original report of the incident indicates that Saxon violently assaulted the victim. Moreover, Saxon displayed a loaded firearm in the presence of two small children, which demonstrates a reckless disregard for their safety. Therefore, the trial court's finding that consecutive sentences are necessary to protect the public is supported by the record.

{¶ 23} The trial court found that consecutive sentences are not disproportionate to the seriousness of Saxon's conduct. Again, the court sentenced Saxon to an aggregate three-year prison term. As previously stated, Saxon's criminal history combined with the criminal actions that gave rise to this case demonstrate that Saxon continues to break the law and that prior criminal sanctions have not deterred him from continuing to commit crimes with a deadly weapon. A three-year

sentence is not excessive in light of Saxon's continuous pattern of violent criminal activity.

{¶ 24} Finally, the court found that Saxon committed the offenses giving rise to this case while he was on postrelease control. (Tr. 38.) Saxon does not dispute the fact that he was on postrelease control from robbery and felonious assault, with two years remaining, when he committed the offenses in this case, and the record supports this finding.

{¶ 25} After reviewing the record and the trial court's findings de novo, we find that the record clearly and convincingly supports the trial court's findings. Therefore, Saxon fails to demonstrate plain error, and the first assignment of error is overruled.

## B. Postrelease Control

{¶ 26} In the second assignment of error, Saxon argues the trial court committed plain error by ordering that the sentence he received in this case run consecutive to the sentence imposed for violating postrelease control in a prior case. He contends the trial court violated R.C. 2967.28(H), which states that "[a] period of post-release control shall not be imposed consecutively to any other post-release control period."

{¶ 27} Regarding prison time for postrelease control, the sentencing entry states, that "[t]he remaining time on CR-19-594517, approximately 2 years, is to run consecutive to the sentence impose[d] in CR-21-661684." Despite Saxon's argument to the contrary, the sentence imposed on the convictions in this case is not another

"post-release control period." Before the court could sentence Saxon to prison for a postrelease-control violation arising from this case, he would first have to serve the consecutive prison terms imposed on his convictions in this case, be released from prison, and then violate the terms of postrelease control. None of that has happened yet.

{¶ 28} Moreover, R.C. 2929.141(A)(1) provides that where a person is convicted of or pleads guilty to a felony while on postrelease control, the court may terminate the term of postrelease control and impose a prison term for the postrelease-control violation. R.C. 2929.141(A)(1) further provides that if the court imposes a prison term on the new felony, "[a] prison term imposed for the [postrelease-control] violation shall be served consecutively to any prison term imposed for the new felony." The court sentenced Saxon to a prison term on a fourth-degree felony, as alleged in the amended Count 1, and on a fourth-degree felony, as charged in Count 6. Therefore, under R.C. 2929.141(A)(1), the court was required to order service of the prison term on the postrelease-control violation in the prior case to be served consecutive to the sentence imposed on the felony convictions in the instant case.

{¶ 29} The trial court accurately explained to Saxon at both the plea and sentencing hearings that if the court found him in violation of the postrelease control imposed in his prior case, he would be required to serve prison time for the postrelease control violation consecutive to the sentence imposed on his felony convictions in this case. At the plea hearing, the court explained:

So do you understand that the plea in this case being a felony may allow the adult parole authority or this court to violate that post release control and add on to any sentence in this case the greater of one year or the time remaining on post release control, whichever is greater, and by law that would have to be consecutive? Do you understand that?

THE DEFENDANT: Yes, your Honor.

(Tr. 18.) At the sentencing hearing, the court stated:

[T]he time remaining on post-release control is going to be a part of this sentence and, by law, that must be consecutive.

* * *

And then understand that post-release control does apply to this case. And it would be, since these are felonies of the fourth degree, post-release control would be up to two years at the discretion of the Parole Board, not this Court.

Once you are on post-release control, as before, if you violate your post-release control, even if you do every day of this sentence, the Parole Board can send you back to prison in increments of nine months for each violation, up to and including one-half of your sentence.

If you commit a new felony while — as you did in this case, while on post-release control, then the new felony sentencing judge or Adult Parole Authority can add on to your new felony sentence the greater of one year or the time remaining on post-release control and, by law, that must be done consecutively.

(Tr. 38-39.)

{¶ 30} Therefore, the trial court did not commit plain error in running the prison time imposed for the postrelease control violation arising from the prior case and the sentences imposed on the felony convictions in this case consecutively. The second assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY EILEEN KILBANE, J., CONCUR