[Cite as *State v. King*, 2025-Ohio-1365.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 114081

    v.                                  :

TIMOTHY KING, JR.,                      :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 17, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-21-661510-A and CR-22-670822-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Margaret Graham and Samantha Sohl, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick Ferrara, Assistant Public Defender, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Timothy King, Jr. ("King") filed this delayed appeal of his convictions in *State v. King*, Cuyahoga C.P. No. CR-21-661510-A (July 19, 2021) ("possession case") and *State v. King*, Cuyahoga C.P. No. CR-22-670822-

A (May 25, 2022)("offender case").  King asks this court to vacate his guilty pleas and reverse his convictions.  Following a thorough review of the record and pertinent law, this court affirms the trial court's judgment.

## I.  Background and Facts

{¶ 2}  In the possession case, King was indicted for the unauthorized use of a vehicle, R.C. 2913.03(B), and drug possession, R.C. 2925.11(A), each a fifth-degree felony.  In the offender case, King was indicted for two counts of rape, R.C. 2907.02(A)(1) and (2), each a first-degree felony, and one count of gross sexual imposition ("GSI"), R.C. 2907.05, a fourth-degree felony.

{¶ 3}  On June 28, 2022, in the possession case, King pleaded guilty as charged.  In the offender case, King pleaded guilty to the amended count of attempted abduction, a fourth-degree felony under R.C. 2923.02 and 2905.02(A)(1), in lieu of R.C. 2907.02(A)(1), one count of rape; and to GSI as charged, also a fourth-degree felony, under R.C. 2907.05.  The second rape count, R.C. 2907.02(A)(2), was nolled.  The parties agreed that the counts did not merge. King was advised he would be classified as a Tier I sex offender under R.C. Ch. 2950 governing sexual-offender registration requirements.

{¶ 4}  Sentence was imposed on July 26, 2022.  In the offender case, King was sentenced to 18 months on each of the two counts to be served consecutively to each other, and to the total sentence imposed in the possession case, as well as a mandatory five years of postrelease control.  King was sentenced to 12-month prison terms on each of the two counts in the possession case to be served concurrently and

two years of discretionary postrelease control. Also in the offender case, King was declared to be a Tier III sex offender.

## I. Assignments of Error

{¶ 5} King assigns two errors in this appeal:

I.   The trial court failed to properly inform defendant of the consequences of his plea pursuant to Crim.R. 11.

II.  The trial court erred in imposing consecutive sentences between counts.

## II. Discussion

### A. Crim.R. 11

#### 1. Standard of Review

{¶ 6} The purpose of the Crim.R. 11(C)(2) colloquy in pleas of guilty in felony cases is to ensure that a defendant is advised of and understands the defendant's constitutional and nonconstitutional rights, so that the defendant has the information needed to enter a plea knowingly, intelligently, and voluntarily. *See, e.g.*, *State v. Veney*, 2008-Ohio-5200, paragraph one of the syllabus; *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981).

{¶ 7} "'The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review.'" *State v. Poage*, 2022-Ohio-467, ¶ 9 (8th Dist.), quoting *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.), citing *State v. Stewart*, 51 Ohio St.2d 86 (1977).

### 2. Analysis

**{¶ 8}** A trial court shall not accept a guilty plea in a felony case under Crim.R. 11(C)(2) without first addressing the defendant personally and doing all the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the *maximum penalty involved*, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the *effect of the plea of guilty* . . . and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the State to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

(Emphasis added.) *Id.*

**{¶ 9}** The Supreme Court of Ohio has formulated the following three-part test to determine whether a defendant knowingly, intelligently, and voluntarily entered his or plea:

> " (1) Has the trial court complied with the relevant provision of the rule?
>
> (2) If the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and
>
> (3) If a showing of prejudice is required, has the defendant met that burden?"

*State v. Barhams*, 2025-Ohio-270, ¶ 10 (8th Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 17.

{¶ 10} A defendant is not required to show prejudice if the trial court completely failed to comply with Crim.R. 11(C)(2)(a) or (b), nor when a trial court fails to explain the constitutional rights outlined in Crim.R. 11(C)(2)(c). *Id.*, citing *id.* In that case, "we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Poage*, 2022-Ohio-467, at ¶ 11 (8th Dist.), citing *Dangler* at ¶ 14, citing *State v. Clark*, 2008-Ohio-3748, ¶ 31, and *State v. Veney*, 2008-Ohio-5200, paragraph one of syllabus.

{¶ 11} King argues that his felony guilty pleas were not voluntarily, intelligently, and knowingly entered in compliance with Crim.R. 11(C)(2). King reasons that "the plain language of Crim.R. 11 requires an understand[ing] of '*effect*' and the '*maximum*' *term* that logically includes how much total prison time a defendant would receive." (Emphasis added.) Consequently, King contends that "[t]hese two requirements, read together, reasonably require a defendant to be advised of the possibility of the *total, discretionary consecutive sentences and sex offender status and registration requirements*." (Emphasis added.) "Accordingly, the trial court failed to substantially comply with Crim.R. 11 and inform King of the maximum term or the nature of his term." King adds that he would not have entered the plea if informed of these possibilities.

{¶ 12} In *Dangler*, the trial court advised the defendant that a guilty plea to a sexual battery charge would require him "'to register as a Tier III sex offender

which means you would have an obligation to register for your lifetime'" which Dangler confirmed he understood. *Dangler*, 2020-Ohio-2765, ¶ 4. The trial court provided the registration details at the subsequently held sentencing. Dangler confirmed the initial registration date and his understanding of the requirements.

{¶ 13} On appeal, Dangler claimed the trial court failed to completely advise him of the responsibilities and requirements associated with the sex-offender classification during the plea colloquy. The Ohio Supreme Court accepted the certified question:

> "During a plea hearing, does the failure of the sentencing court to inform a defendant of all of the penalties associated with a sex offender classification imposed by R.C. Chapter 2950 constitute a complete failure to comply with Crim.R. 11 and render the plea void without the need to show prejudice resulted?"

*Dangler*, 2020-Ohio-2765 at ¶ 9, quoting *State v. Dangler*, 2018-Ohio-723.

{¶ 14} The Court identified the threshold question as "whether the classification of an offender as a sex offender and the various obligations that come with that classification are part of the 'penalty' that is imposed on a defendant for his crime" under Crim.R. 11(C)(2)(a). *Id.* at ¶ 18. The Court proceeded with the "assumption" that the sex-offender registration scheme constituted a penalty for purposes of Crim.R. 11 based on its reasoning in *State v. Williams*, 2011-Ohio-3374. *Dangler* at ¶ 20.

{¶ 15} In *Williams*, addressing the question of retroactive application of the scheme, the court determined that when the various parts of the sex-offender registration scheme were considered together, there was enough of a punitive aspect

that it would be unconstitutional to apply the scheme retroactively as amended. *State v. Hindman*, 2023-Ohio-1974, ¶ 19 (8th Dist.), citing *Dangler* at ¶ 19-20, and *Williams* at ¶ 21. The *Dangler* Court refused to reconsider *Williams* because "Williams did not [directly] address whether the sex offender registration scheme" was a penalty under Crim.R. 11, it was unnecessary to do so to decide the case and it was beyond the scope of the certified question. *Hindman*, at ¶ 20, citing *Dangler* at ¶ 20.

{¶ 16} *Dangler* explained:

[T]he *Williams* court did not decide that any specific element of the statutory scheme constitutes a criminal penalty. Rather, we explicitly stated that "[n]o one change compels our conclusion that S.B. 10 [amending R.C. Chapter 2950 to classify offenders in line with the federal Adam Walsh Act] is punitive." *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, at ¶ 21. It was the changes to the statutes "in aggregate" that rendered the retroactive application of the statutory requirements punitive. *Id.* Thus, although R.C. Chapter 2950 contains a mixture of remedial and punitive elements, *id.* at ¶ 20, it was the statutory scheme as a whole that the court deemed to be punitive, *id.* at ¶ 16, 21.

*Id.* at ¶ 22.

{¶ 17} The court concluded that "[b]ecause the trial court in this case advised Dangler that he would be subject to the registration requirements of that statutory scheme, the trial court did not completely fail to comply with" the maximum-penalty-advisement requirement under Crim.R. 11(C)(2)(a). *Id.*

{¶ 18} Partial compliance required that Dangler show prejudice, which was addressed by the court because the issue had been fully briefed. "'"Prejudice must be established on the face of the record."'" *Dangler* at ¶ 7, quoting *Hayward v.*

*Summa Health Sys./Akron City Hosp.*, 2014-Ohio-1913, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462 (1999). The court found that there was "nothing in the record indicating that Dangler would not have entered his plea had he been more thoroughly informed of the sex offender-classification scheme." *Id.* at ¶ 24. The court rejected Dangler's argument that challenging the plea explicitly demonstrated that his plea would not have been otherwise made. *Id.*

{¶ 19} At the beginning of the plea hearing in the instant case, the State announced the terms of the plea agreement, including a Tier I sex offender registration designation. King and defense counsel agreed that the information was correct.

{¶ 20} King stated he was 27 years of age, attended school through the 11th grade, held no professional licenses, and was currently on parole. The trial court advised:

> Court: Do you understand that your plea in these cases would make you a parole violator, post release control violator, and the parole authority could impose consequences for that old case because of your pleas in th[ese] new cases?
>
> King: Yes.
>
> Court: Do you also understand that I would have the option of a sentence to impose a consecutive prison term for the amount of time you have remaining on post release control or 12 months, whichever is greater?
>
> King: Yes.

Tr. 7-8.

{¶ 21} The trial court explained the subject offenses:

Court: Do you understand the offenses to which you're pleading guilty to, in Case [No.] 670822, Count 1 is as amended is abduction, it's a violation — attempted abduction violation of [R.C]. 29023.02 and 2905.02(A)(1). As amended, it's a felony of the fourth degree. Count 3 is gross sexual imposition, a violation of [R.C.] 2907.05(A)(1). It's a felony of the fourth degree. It's also a Tier I offense with respect to your requirement to report your information, your address and residence and educational institutions.

In Case [No.] 66510, Count 1 is unauthorized use of a motor vehicle; it is a felony of the fifth degree. And Count 2 is drug possession, a violation of [R.C.] 2925.11(A), a felony of the fifth degree. . . . Do you understand those offenses?

King: Yes.

. . .

Court: Do you understand the potential consequences of two F-4s, the two F-5s, and a forfeiture, which I'll go through all of those potential consequences now.

Each felony of the fourth degree has a potential for a term of incarceration in the state prison of 6 to 18 months in one-month increments and a fine up to $5,000. Each felony of the fifth degree has a potential for a term in prison of 6, 7, 8, 9, 10, 11, or 12 months and a fine up to $2,500.

Tr. 10- 11. The trial court explained the additional consequences including fines and postrelease control.

{¶ 22} Except as relates to the possible imposition of a consecutive prison term due to King's violation of his current parole, there was no discussion of consecutive sentences at the plea hearing. In Ohio, where consecutive sentences are not mandatory, notice is not required. "'Crim.R. 11(C)(2)(a) does not require a trial court to advise a defendant of the potential for discretionary consecutive sentencing.'" *State v. Berry*, 2023-Ohio-605, ¶ 16 (8th Dist.), quoting *State v. Nave*,

2019-Ohio-1123, ¶ 10 (8th Dist.), citing *State v. Vinson*, 2016-Ohio-7604, ¶ 24 (8th Dist.). The imposition of consecutive sentences in this case was discretionary and arose per R.C. 2929.14(C)(4); thus, "where the decision to impose consecutive sentences arises purely from the trial court's discretion under R.C. 2929.14(C)(4), such an advisement is not required." *Id.*, quoting *id.*, citing *State v. Johnson,* 40 Ohio St.3d 130 (1988), syllabus. King's consecutive-sentence argument lacks merit.

{¶ 23} As to the Tier I classification, the trial court added:

> Court: And finally, the Tier I classification as a sex offender will require you to register annually and verify your address annually, and it could be removed after 10 years, but it will require you to report your address where you live, your residence, where you work, any school you might go to, IP addresses, registration for cars, phone information. You have to do what for 15 years with potential to have it removed after 10 years.
>
> Do you understand all that?
>
> King: Yes.

Tr. 13.

{¶ 24} As to the sex-offender registration requirement, the question is whether the trial court was in complete noncompliance, full or partial compliance with Crim.R. 11(C)(2)(a). If partial, this court considers whether the record supports that King suffered prejudice, which would invalidate the plea.

{¶ 25} It is undisputed that King was informed at the plea hearing that the Tier I sex offender registration applied. Several weeks later at the sentencing, as reflected by the PSI and announced by the State, King was already subject to Tier II registration due to a prior sexual offense conviction, and the current plea would subject him to Tier III registration.

{¶ 26} The trial court thoroughly reviewed the record for the Tier III registration form provided:

> Court: All right. Before I address the State of Ohio, I do have a form that we need to discuss on the record, this sexual offender registration notification requirements. I need the explanation of duties to register. I believe this case is a Tier II. . . Tier III?
>
> State: It's a Tier III because he has a previous unlawful sexual conduct with a minor, so he was already registered as a Tier II.
>
> Court: All right. So your plea in this case will make you — you have been convicted of or pled guilty to a sexually oriented offense or child victim offense, and therefore you're classified as Tier III sex offender/child victim offender registrant. . . .

Tr. 23-24.

{¶ 27} The trial court completed the narration of the form contents and stated:

> Court: There is a signature here below the language which reads, I acknowledge that the above requirements have been explained to me and that I must abide by all of the provisions of the Ohio Revised Code Chapter 2950.
>
> Sir, that's your signature right there?
>
> King: Yes.
>
> Court: Is that true? Do you understand what I just read?
>
> King: Yes.
>
> Court: Any questions?
>
> King: No.
>
> Court: All right. So I will also certify that I specifically informed this offender of his duties as I've just read. He's indicated to me he understands those duties.

Tr. 27-28.

{¶ 28} Thus, King verbally confirmed that he signed the Tier III sex offender certification acknowledging his understanding of the contents. King did not protest or pose an objection, request to withdraw his guilty plea, or proclaim his innocence.

{¶ 29} Although advised that he was subject to Tier I sex offender registration requirements at the time of the plea, King confirmed his understanding at that time that the Tier I registration applied. King also confirmed his understanding at the plea hearing that "there is no promise of any particular sentence in this matter. . . ." Tr. 14.[1]

{¶ 30} Under the narrow facts of this case, this court finds that the trial court partially complied with the Crim.R. 11(C)(2)(a) and (b) regarding the maximum penalty and effect of the plea, thus, King must establish prejudice — that but for the trial court's failure to completely comply, he would not have pleaded guilty. Prejudice must be established "'"on the face of the record."'" *Dangler*, 2020-Ohio-2765 at ¶ 7, quoting *Hayward,* 2014-Ohio-1913, at ¶ 26, quoting *Wagner,* 85 Ohio St.3d at 462. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 31} King claims he would not have entered into the plea agreement if he had been informed that Tier III applied. A thorough review of the record provides no support for King's claim of prejudice. In the offender case alone, King faced two

---

[1] Also supporting the defense's understanding at the time of the plea of the proper classification is that sex offender tier classifications are contingent upon the offense. R.C. 2950.01. A judge lacks discretion to modify the classification. *State v. Kohler*, 2024-Ohio-3302, ¶ 49 (8th Dist.), citing *State v. Blankenship*, 2015-Ohio-4624, ¶ 1, citing *Williams,* 2011-Ohio-3374, at ¶ 20.

first-degree felony rape counts (R.C. 2907.02(A)(1) and (2)) subject to a definite sentencing range of three to 11 years up and an indefinite term of up to five and one-half years under the Reagan Tokes Act for a single count and Tier III registration upon release. King's aggregate term in the instant case was 48 months and Tier III registration — far less than his maximum exposure under the original charges. King "'significantly reduced his exposure to prison time by pleading guilty. . . .'" *State v. Ponomarenko*, 2024-Ohio-4789, ¶ 31 (8th Dist.), quoting *State v. Robinson*, 2022-Ohio-82, ¶ 22 (8th Dist.). King has not supported his burden of establishing prejudice.

{¶ 32} Further as to Crim.R. 11(C)(2)(b) and informing the defendant of the "effect" of the guilty plea, "Crim.R. 11(B)(1) states that the effect of a guilty plea 'is a complete admission of the defendant's guilt.' The right to be informed of the effect of a guilty plea is a nonconstitutional right." *Ponomarenko* at ¶ 27, citing *State v. Moore*, 2017-Ohio-8483, ¶ 16 (8th Dist.).

{¶ 33} The trial court read each count, asked King how he pled to that count, and each time King responded "guilty." Next, the trial court read the underlying facts of the count, asked King if the facts were true, and King responded affirmatively. The trial court, State, and defense counsel agreed that "this defendant has knowingly and voluntarily, with a full understanding of his rights, entered these guilty pleas. I do accept his pleas, find that he is guilty." Tr. 17. Counsel for the parties confirmed that the trial court "complied with Crim.R. 11." Tr. 17.

{¶ 34} The majority of this court recently determined, pursuant to App.R. 26 and Loc.App.R. 26's en banc procedure, and subsequent en banc opinion, that the trial court's failure to recite the words that a guilty plea "is a complete admission of the defendant's guilt" may legally satisfy Crim.R. 11(C)(2)(b) under certain circumstances. *State v. Fontanez*, 2024-Ohio-4579, ¶ 14, 20 (8th Dist.)[2] (citing *Griggs*, 2004-Ohio-4415),[3] *determining a conflict exists, 01/22/2025 Case Announcements*, 2025-Ohio-156. "[W]here a trial court does not explicitly state that a guilty plea constitutes a complete admission of guilt during a Crim.R. 11 colloquy but the court otherwise complies with the rule and the defendant does not assert actual innocence, we may presume that the defendant understood that his guilty plea was a complete admission of guilt." *Ponomarenko*, 2024-Ohio-4789, ¶ 29, quoting *Fontanez* at ¶ 20. The trial court did not explicitly state the "complete admission of guilt" language in this case but otherwise complied with the rule. King does not assert actual innocence or demonstrate prejudice. This court presumes King's guilty plea was a complete admission of guilt.

{¶ 35} King has failed to establish prejudice for purposes of Crim.R. 11(C)(2)(a) and to demonstrate that the trial court failed to comply with

---

[2] Judge Michael John Ryan dissented with a separate opinion, joined by Judges Sean C. Gallagher, Emanuella D. Groves, and Anita Laster Mays.

[3] "'[A] defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial.'" *Id.*, quoting *Griggs* at ¶ 19.

Crim.R. 11(C)(2)(b).[4]  This court finds that King's guilty pleas were knowingly, intelligently, and voluntarily made.

{¶ 36} The first assignment of error is overruled.

**B.  Consecutive-Sentence Imposition**

{¶ 37} King advances that the trial court's imposition of consecutive sentences was not clearly and convincingly supported by the record.

{¶ 38} As previously addressed by this court:

> [C]onsecutive sentences may be imposed if the trial court makes the findings under R.C. 2929.14(C)(4).  A trial court is not required to recite the statutory language verbatim, nor is it required to state its reasons to support its findings ""provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.""" *State v. Saxon*, 2023-Ohio-306, at ¶ 17 (8th Dist.), quoting *State v. Sheline*, 2019-Ohio-528, ¶ 176 (8th Dist.),quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. If the findings are made, our review of consecutive sentences is limited to whether the record clearly and convincingly does not support the findings.  R.C. 2953.08(G)(2)(a).

*State v. Percy*, 2024-Ohio-664, ¶ 10 ("*Percy II*"), quoting *State v. Percy*, 2020-Ohio-1876, ¶ 10 (8th Dist.) ("*Percy I*").

{¶ 39} To impose consecutive sentences, the trial court must find that

> (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

---

[4] The author of this opinion, Judge Anita Laster Mays, is constrained to follow *Fontanez's* en banc decision notwithstanding her dissent therein.

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 40} Our analysis of this assignment of error requires a review of the record. The trial court announced:

The Court has considered all the principles and purposes of felony sentencing, all the appropriate recidivism and seriousness factors with respect to the appropriate sentence in this matter on both of these cases.

First of all, I'm finding that this defendant is not amenable to community control sanctions. His prior criminal history is replete with violence and prior sexual offense. His supervision while in the institution is also indicative that he is not someone who can follow rules and be supervised.

So likewise, because this happened while being supervised by the APA on bond to this Court, also reasons that show he's not amenable to community control sanctions. In fact, as well, those same reasons indicate this Court is required and should impose consecutive sentences. It is necessary in this case to punish this offender. It's not disproportionate to what he's done in these two cases. And the Court further finds crimes were committed while awaiting trial and under a sanction or post release control.

The harm also is so great or unusual, a single term would not adequately reflect the seriousness of the conduct. And also criminal history shows consecutive terms are needed to protect the public.

Tr. 42-43.

{¶ 41} Eighteen-month terms were imposed on each of the two counts of the offender case to be served consecutively to each other. Twelve-month terms were imposed for each of the two counts in the possession case to run concurrently to each other, but consecutively to the sentence on the offender case for a total term of 48 months.

{¶ 42} The sentencing entries provide in pertinent part:

[Twelve months each for the two fifth-degree felonies in CR-21-661510-A,] Counts concurrent. Sentence to run consecutive to Case CR-22-670822.

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant[.]

Journal Entry Case No: CR-21-661510-A ( July 27, 2022) 126796472, p. 1-2.

{¶ 43} Further,

[The journal entry in CR-22-670822-A for the two fourth-degree felonies provide:] Counts to run consecutive to each other. Sentence to run consecutive with CR 661510.

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or

was under post-release control for a prior offense, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

Journal Entry Case No. CR-22-670822-A (July 26, 2022) 126794651, p. 1.

{¶ 44} The victim advised the trial court of the toll King's acts, and encounters with the system as a result, have taken and how they continue to affect her. The State and PSI informed the trial court of King's long criminal history including sexual conduct with a minor, retaliation, robbery, and a large number of infractions committed while incarcerated.

{¶ 45} The trial court cited and journalized the requisite factors of R.C. 2929.14(C)(4). King has failed to show that the record does not support the imposition of consecutive sentences.

{¶ 46} The second assignment of error is overruled.

## III. Conclusion

{¶ 47} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)